2023 IL App (4th) 220704

NO. 4-22-0704

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 22, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Whiteside County |
| TYLER S. SHAW-SODARO, | ) | No. 18CF366 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Patricia Ann Senneff, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment and opinion of the court.
Presiding Justice DeArmond and Justice Steigmann concurred in the judgment
and opinion.

**OPINION**

¶ 1 Defendant Tyler S. Shaw-Sodaro was convicted of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2018)) following a jury trial and was sentenced to nine years' imprisonment. In this direct appeal, he argues (1) he was denied a fair trial where the prosecution repeatedly misstated the law in closing arguments, or, in the alternative, that counsel was ineffective for failing to object and request a curative jury instruction, (2) neither the victim's age nor the time from his prior felony conviction justified the enhancement of his sentence, and the failure to include his pretrial detention period in the computation of the latter would represent an unconstitutional application of law, and (3) the trial court considered an improper factor inherent in the offense resulting in an impermissible double enhancement during sentencing. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3        The State charged defendant with a single count of aggravated criminal sexual

abuse (*id.*). At the time of the incident that is the subject of this appeal, defendant was engaged to

and shared a home with Monica E. The charging instrument alleged that on or about September 2,

2018, defendant, who was over the age of 17, committed an act of sexual conduct by knowingly

touching the breasts of A.R. (Monica's niece), who was under the age of 13. The charging

instrument also contained A.R.'s birthdate next to her name, which showed she was 10 years old.

There was no pretrial notice or motion specifically alerting defendant that the State would seek an

extended-term sentence. Defendant posted bail and was released, but he was then arrested on

charges filed in Whiteside County case No. 19-CF-188. Reasoning that he would not be able to

afford bond to secure release on the new charges, defendant filed a motion to exonerate his bond

in this case; his motion was granted, and he was maintained in pretrial detention on the charges in

this case as well as the subsequent charge. A jury trial in this matter commenced on September 22,

2021.

¶ 4                                         A. Trial

¶ 5        The evidence at trial established that, one evening in September 2018, defendant

arrived home after visiting a local tavern. Monica E. was asleep but A.R. was staying at their home

over the weekend. A.R. testified that once defendant returned home, he initially mentioned having

to go to the bathroom but instead sat on the couch next to her. He wrapped his arms around A.R.

giving her "bear hugs," before he began to kiss her and ultimately placed a hand under her shirt,

groping her chest. She was wearing a tank top with no bra underneath. She then reminded

defendant that he previously said he needed to go to the bathroom. When defendant got up and

went to the bathroom, A.R. put on a sweatshirt in the hopes of preventing the same occurrence

when he returned. When defendant returned, A.R. told him she was going to go to the back porch because she was not feeling well. While on the porch, she reached out to her mother and grandmother, and her mother eventually picked her up from defendant's home. The day after the incident, A.R. told her grandparents what had happened. After filing a police report, A.R. gave a recorded statement about what took place on the night in question. A.R. agreed that she was better able to remember what happened when she gave her recorded statement shortly after the fact rather than testifying to the events almost three years later.

¶ 6        A.R. liked spending time at Monica E. and defendant's house prior to the incident; they would swim, "go eat out," and do "regular things a family should do." During the summer months, she spent five days a week at their home—more time than she spent at her own home. She had a good relationship with both Monica E. and defendant until she reported the incident at issue, after which Monica blocked her on social media and began telling others that she was lying.

¶ 7        The State also introduced a recording of the interview with A.R. conducted a day following the incident. In the recording, A.R. described the incident in far greater detail than she did in her trial testimony. In her interview, she explained that she believed defendant to be intoxicated at the time of the events in question and that he could not walk in a straight line. She also described a second incident, which occurred after she put on the sweatshirt. Defendant returned from the bathroom and once again began to hug her and put his hand up her sweatshirt; instead of skin-on-skin contact, defendant was touching her tank top before she stood up and went to the back porch.

¶ 8        A.R. also stated she was born in 2007. An officer with the Rock Falls Police Department and A.R.'s mother both testified that at the time of the offense A.R. was 10 years old.

¶ 9 Defendant only called one witness, Monica E. She had dated defendant for approximately five years. During that time, the two lived together along with her daughter and son. Defendant had a positive relationship with her children. When asked what A.R.'s reputation for truthfulness in the community was, Monica responded, "Bad."

¶ 10                                    B. Closing Arguments

¶ 11 During its initial closing argument, the State argued that by groping A.R.'s breast, defendant had committed the offense charged and that sufficient evidence had been introduced for the jury to find defendant guilty beyond a reasonable doubt. The State further argued, "And that's essentially what your job boils down to. Is [A.R.] telling the truth when she says that [defendant] touched her breast[?] If she is, then the State has met all of the elements of the offense and [defendant] is guilty as charged." The State turned its focus to jury instructions related to credibility and attempted to minimize the fact that A.R. left out certain details during her testimony when compared to the recorded interview, arguing that

> "[i]f you believe [A.R.] was telling the truth and the [d]efendant is guilty of
> Aggravated Criminal Sexual Abuse, then you should sign a verdict of guilty.
>
> The only way you cannot sign a guilty verdict is if you believe [A.R.] is
> lying. And given all of the circumstances at play here and the fact that she had
> nothing to gain by lying, that is simply not a reasonable doubt and doesn't make
> any sense."

¶ 12 Defense counsel did not object, but instead, during his closing, argued,

> "Now, [the State] has suggested to you that the only way you can find my client not
> guilty is if you believe [A.R.] lied, and respectfully I disagree. And I would like to

take a little bit of time to explain to you why I don't think that is a correct statement of the law.

First, this is not a battle of equals. Your job is not to take two equal sides and weigh them and see which side comes out on top. Our entire criminal justice system is based on the principle that a defendant, when he is accused or she is accused, is presumed to be innocent. And that presumption of innocence stays with them throughout the trial, and throughout our arguments, and throughout your deliberations unless you find beyond a reasonable doubt that the case has been proven.

You don't have to believe that [A.R.] is lying, you just have to have a reasonable doubt. A doubt in your mind that is reasonable."

¶ 13　　　　Defense counsel referenced jury instructions that would be given by the trial court, noting that the presumption of innocence remained with defendant and how "it is not overcome unless from all of the evidence in this case you, the 12 of you, are convinced beyond a reasonable doubt that he is guilty." Counsel then reminded the jury that the State had the burden of proof and that defendant was not required to "prove anything." He left the jury with this argument: "Not guilty means not proved. If you have a reasonable question in your mind about whether you can believe what [A.R.] said, you must, you must find [defendant] not guilty."

¶ 14　　　　In the surrebuttal, the State argued again that "if A.R. is telling the truth then [defendant] is guilty of Aggravated Criminal Sexual abuse and that the only way that he could be not guilty is if [A.R.] were lying." Further, if members of the jury believed A.R. was lying, it was their duty to find defendant not guilty. If they believed she was telling the truth, then it was their duty to find him guilty. The State also informed the jury that it carried the burden to prove

defendant committed the offense beyond a reasonable doubt. Defense counsel did not object or request a curative instruction.

¶ 15    The trial court issued standard instructions on the presumption of innocence and the burden of proof; these instructions informed the jury that a defendant is presumed innocent of the charge against him and that the presumption is not overcome unless all of the evidence in the case establishes guilt beyond a reasonable doubt. The court also informed the jury that the State bore the burden of proving defendant's guilt beyond a reasonable doubt, that this burden remains on the State throughout the case, and that defendant is not required to prove his innocence. The following instructions were also given:

"Closing arguments are made by the attorneys to discuss the facts and circumstances in the case and should be confined to the evidence and to reasonable inferences to be drawn from the evidence. Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded.

Only you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his age, his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all of the evidence in the case.

***

You have before you evidence that [A.R.] made a statement concerning the offense charged in this case. It is for you to determine what weight should be given

to the statement. In making that determination, you should consider the age and maturity of [A.R.], the nature of the statement, and the circumstances under which the statement was made."

The State did not submit a special interrogatory to the jury concerning A.R.'s age at the time of the offense.

¶ 16        The jury deliberated and ultimately found defendant guilty.

¶ 17        C. Sentencing

¶ 18        At the sentencing hearing, the State argued that defendant was eligible for an extended-term sentence because (1) A.R. was under the age of 12 at the time of the offense and (2) defendant had previously been convicted of a Class 1 felony (aggravated robbery) within a 10-year period, computed by excluding the time spent in custody. The prior conviction was the result of Whiteside County Case No. 09-CF-467, in which defendant was sentenced on January 27, 2010, to 180 days in county jail with no day-for-day credit. The State explained that defendant had been in custody on the current charge continuously since September 4, 2019, when his bond was revoked, and that he previously spent approximately three months in custody from December 3, 2018, through March 13, 2019. Excluding the period of pretrial detention from the calculation meant that less than 10 years had elapsed between the two convictions (*i.e.*, the period would have exceeded 10 years if the time in pretrial detention were included).

¶ 19        In reviewing the factors in aggravation, the trial court stated it considered A.R.'s age at the time of the offense. The court imposed an extended-term sentence of nine years in prison but did not elaborate on what served as the basis for the extended-term sentence.

¶ 20        This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22         Defendant argues that the prosecutor improperly shifted the burden during closing argument, which he contends amounted to either plain error or ineffective assistance of counsel, owing to counsel's failure to object. He also asserts that his extended-term sentence was improper and that the trial court impermissibly enhanced his sentence based on a factor inherent in the offense.

¶ 23                                 A. Closing Argument

¶ 24         While prosecutors have wide latitude in closing arguments, "there are limits to proper argument." *People v. Simms*, 168 Ill. 2d 176, 196 (1995). Prosecutors are not allowed to misstate the facts or the law as applicable to the case. *People v. Carbajal*, 2013 IL App (2d) 111018, ¶ 29. "[A] criminal defendant has no duty to produce evidence at trial, and the State may never shift its burden of proof to a defendant." *People v. Mudd*, 2022 IL 126830, ¶ 34. Defendant acknowledges that he has failed to preserve his claims of improper argument for appeal, but he requests review under both prongs of the plain error doctrine and, in the alternative, argues counsel's failure to object amounted to ineffective assistance of counsel. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (finding that to preserve an issue for review, a party must raise the issue at trial and in a written posttrial motion).

¶ 25                                   1. *Plain Error*

¶ 26         "The initial analytical step under either prong of the plain error doctrine is determining whether there was a clear or obvious error at trial." *People v. Sebby*, 2017 IL 119445, ¶ 49. Defendant specifically points to the prosecutor's argument that "[t]he only way you cannot sign a guilty verdict is if you believe [A.R.] is lying" as error. Our supreme court has

outlined the difference between permissible arguments concerning the credibility of a witness and those that are impermissible. The culmination of the court's decisions in *People v. Coleman*, 158 Ill. 2d 319 (1994), and *People v. Banks*, 237 Ill. 2d 154 (2010), establishes that it is permissible for a prosecutor to argue that a jury would have to believe the State's witnesses were lying in order to believe defendant's version of events, but it is impermissible to argue that the jury would have to believe the State's witnesses were lying in order to acquit defendant. *Banks*, 237 Ill. 2d at 184-85.

¶ 27        The State concedes that the prosecutor's statements in this instance were impermissible but argues that they do not constitute plain error under either prong. We accept the State's concession of error and proceed to analyze defendant's claim under the first and second prong of plain error. Defendant bears the burden of persuasion under both prongs of the plain error doctrine. *People v. Reese*, 2017 IL 120011, ¶ 69. If he fails to meet his burden, we will honor the procedural default. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

¶ 28        Under the first prong, we will reverse only if defendant establishes that the evidence was so closely balanced that the error alone threatened to tip the scales of justice against him "and that the prosecutor's comments were 'clear or obvious' reversible error that changed the outcome of the trial." *Mudd*, 2022 IL 126830, ¶ 22; see also *People v. Galarza*, 2023 IL 127678, ¶ 45. Recently, our supreme court opined that in the context of improper closing argument,

> "the prosecutor's comment must have had some probable bearing on the result ([citation]), regardless of how the defendant challenges the comment on appeal. The prosecutor's comment—whether it is preserved and attacked directly or it is unpreserved and attacked indirectly via the alternative contentions of plain error and ineffective assistance—must have been damaging enough that it 'severely

threatened to tip the scales of justice' against the defendant. [Citations.]" *People v. Williams*, 2022 IL 126918, ¶ 57.

¶ 29      Defendant claims that the evidence in this case was closely balanced. To determine whether the evidence was, in fact, closely balanced, we conduct a qualitative, commonsense assessment of the evidence relating to the elements of the charged offense as well as any evidence regarding the witnesses' credibility. *Id.* ¶ 58.

¶ 30      To sustain a charge of aggravated criminal sexual abuse, the State was required to prove that defendant was over the age of 17, that A.R. was under the age of 13, and that an "act of sexual conduct" was committed. 720 ILCS 5/11-1.60(c)(1)(i) (West 2018). The ages of both defendant and A.R. were clearly established, leaving the question of whether an act of sexual conduct was committed as the central issue in the case. To that end, the State relied on the pretrial recording of A.R.'s explanation of the events made only a day or two after they occurred and her live testimony. There was no competing version of events put forth by defendant. Instead, A.R.'s credibility was challenged when Monica E. simply testified that A.R.'s reputation for truthfulness in the community was "[b]ad." Effectively, defendant argues that there was a credibility contest and that the case was closely balanced because it hinged on the believability of the victim. Defendant's arguments mirror those made in *Williams*, where the court found that there was no credibility contest because there were no differing accounts, only those of the victims. *Williams*, 2022 IL 126918, ¶ 61. Defendant's contention that the case was closely balanced simply because it hinged on the believability of the victim is without merit where there was no credibility contest. See *People v. Sauls*, 2022 IL 127732, ¶ 52 ("The positive, credible testimony of a single witness, even if contradicted by the defendant, is sufficient to convict a defendant.").

¶ 31 Here, the jury was presented with a video recording of A.R. days after the incident in question where she explained the incident, and the jury was also presented with her live testimony. While there were some inconsistencies between the video recording and the live testimony, A.R. remained steadfast that defendant committed an act of sexual conduct upon her. Monica's testimony that A.R.'s reputation for truthfulness was "[b]ad" does not make this case closely balanced where there was no motive to lie and no competing version of events put forth by the defense. A commonsense qualitative analysis of the evidence in this case does not show that the evidence was closely balanced. The verdict in this case was the result of the substantially one-sided evidence presented and not an improper argument. The remainder of defendant's arguments posed under this prong are more appropriately addressed in the analysis under the second prong of plain error.

¶ 32 In arguing the error in this case was severe enough to constitute a second prong error, defendant asserts that it "directly impacted the jurors['] understanding of the burden of proof" and made the result of the trial unreliable. Similar to his arguments under the first prong, defendant contends that the improper arguments during closing arguments "opened the door to the jurors signing a guilty verdict because they merely believed A.R. was *probably* telling the truth, so [defendant] was *probably* guilty." (Emphasis in original.)

¶ 33 Under the second prong, we determine whether the " 'error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Galarza*, 2023 IL 127678, ¶ 45 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). Our supreme court has noted that "comments in prosecutorial closing arguments will rarely constitute second-prong plain error because the vast majority of such comments generally do not undermine basic protections afforded to criminal

defendants." *Williams*, 2022 IL 126918, ¶ 56 (citing *People v. Moon*, 2022 IL 125959, ¶ 29, citing *Neder v. United States*, 527 U.S. 1, 8-9 (1999)).

¶ 34 We find that defendant has failed to establish second-prong plain error. Despite the improper arguments from the prosecutor, defense counsel seized on the opportunity to explain the defect in the State's argument to the jury, and his argument and explanation were later reinforced when the trial court instructed the jury. Those very same instructions set forth the burden of proof upon the State and the presumption of innocence that was afforded to defendant. Further, the court also instructed the jury that closing arguments did not constitute evidence and that the jurors were the arbiters of believability and provided the factors that should be used to afford weight to the testimony of A.R. See *People v. Macri*, 185 Ill. 2d 1, 52 (1998) (noting that any alleged error resulting from prosecutor's argument would have been cured by the trial court's jury instructions); *People v. Bell*, 113 Ill. App. 3d 588, 601 (1983) (finding that "because the jury was properly instructed on the prosecution's burden of proof, and the comment did not negate these instructions or shift the burden of proof to the defendants"). Given the instructions, there was no threat that the jury was under any misapprehensions about the applicable law. See *People v. Glasper*, 234 Ill. 2d 173, 215 (2009) (finding where the trial court properly instructed the jury, a prosecutor's improper argument was not so prejudicial that the jury ignored the court's instructions and based verdict on such argument). The prosecutor himself also diminished the severity of the error where he consistently informed the jury that the State had the burden of proof to prove defendant guilty beyond a reasonable doubt.

¶ 35 Accordingly, the prosecutor's argument in closing was not damaging enough that it severely threatened to tip the scales of justice against defendant. *Williams*, 2022 IL 126918, ¶ 57.

¶ 36 2. *Ineffective Assistance of Counsel*

¶ 37　　　　　In the alternative, defendant claims that he received ineffective assistance because his counsel failed to object to the statements of the prosecutor during closing arguments. Criminal defendants are entitled to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. A defendant's claim of ineffective assistance of counsel is analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Gayden*, 2020 IL 123505, ¶ 27. To prevail on a claim of ineffective assistance of counsel, a defendant must "establish both that counsel's performance fell below an objective standard of reasonableness and that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

¶ 38　　　　　In order to establish that counsel's performance was deficient, a defendant must show that his counsel was so inadequate as to fail as representation guaranteed by the sixth amendment. *People v. Smith*, 195 Ill. 2d 179, 188 (2000). There is a strong presumption that the challenged action or inaction on the part of counsel was the result of sound trial strategy, which is generally immune from claims of ineffective assistance of counsel. *Id.*

¶ 39　　　　　Here, defense counsel's arguments on the matter show that he was not unaware of the State's arguments, but he chose to forgo an objection as a matter of trial strategy. Instead, counsel addressed the statements directly with the jury as discussed above, and he did so very effectively. Counsel informed the jury that the State was misstating the law, that defendant was presumed innocent, and that the State bore the burden of proof before assailing the credibility of A.R. We are unable to conclude this was an unsound trial strategy. Defendant has not rebutted the presumption that the failure to object to the statements in the opening-closing argument by the State was a sound trial strategy.

¶ 40 Defendant concedes that defense counsel's failure to object was trial strategy but argues it was not a reasonable one, citing cases such as *People v. Pegram*, 124 Ill. 2d 166 (1988). We agree with the State that the cases cited by defendant are distinguishable where they involved the failure to request jury instructions that would have bolstered the chosen defense strategy. The issue here is not the jury instructions given but defendant's contention that a further curative instruction was required.

¶ 41 Regarding the comments in the surrebuttal by the State, defendant has failed to establish that a reasonable probability exists that, but for counsel's failure to object, the result of the proceeding would have been different. We have already found the evidence in this case was not so closely balanced to allow reversal under the first prong of plain error. Reviewing the closing arguments in their entirety—as we must—reveals the State commented that it bore the burden of proof beyond a reasonable doubt. Any prejudice that may have occurred was cured by the trial court's jury instructions.

¶ 42 As we have found counsel engaged in a reasonable trial strategy to address the comments directly and defendant was not prejudiced where the jury was properly instructed, the ineffective assistance of counsel claim fails.

¶ 43 B. Extended-Term Sentence

¶ 44 Defendant also argues that his extended-term sentence was inappropriate. He advances two contentions on this point, asserting that (1) to the extent the extended term was based on the victim's age, the State failed to comply with statutory requirements in pursuing his extended-term sentence because A.R.'s age was not listed in the indictment, and it also failed to submit the question of her age to the jury and (2) the calculation of the time between defendant's felony convictions fell below 10 years only because it excluded the time of defendant's pretrial

detention and because the latter was due to his inability to post bond it constitutes a violation of the equal protection clause.

¶ 45        Defendant in this case was charged with aggravated criminal sexual abuse where the victim was under 13 years of age, a Class 2 felony punishable by imprisonment of 3 to 7 years. 720 ILCS 5/11-1.60(c)(1)(i) (West 2018); 730 ILCS 5/5-4.5-35(a) (West 2022). At sentencing, the State advanced two theories for an extended-term sentence. First, the State pointed to section 5-5-3.2(b)(3)(i) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(b)(3)(i) (West 2022)), which allowed the trial court to consider imposing an extended-term sentence where defendant committed a felony against a person under 12 years of age at the time of the offense. Establishing the aggravating factor that A.R. was under the age of 12 increased the statutory sentencing range to a minimum of 7 years and a maximum of 14. *Id.* § 5-4.5-35(a). Second, the State argued that, excluding time spent in custody, defendant had been convicted of a higher class felony within 10 years, also allowing the imposition of a sentence in the 7 to 14 year range. *Id.* § 5-5-3.2(b)(1).

¶ 46                          1. *The Age of the Victim*

¶ 47        The Illinois Supreme Court case of *People v. Ferguson*, 132 Ill. 2d 86 (1989), requires that we discard A.R.'s age as a possible basis for the extended-term sentence. In *Ferguson*, the court considered a consolidated appeal where the defendants were all facing felony counts that had been upgraded to the aggravated version of the offense based on the victim being under the age of 13. *Id.* at 95. The court analyzed whether the legislature clearly intended for the imposition of an extended-term sentence because the victim was under the age of 12 after the charge had already been enhanced because the victim was under 13. *Id.* at 97-99. It concluded that such an intent was not clearly expressed and that "the age of the victim should not be considered for the imposition of an additional penalty under section 5-5-3.2(b)(3)(i) where the penalty for the

underlying offense has already been enhanced based on the age of the victim." *Id.* at 98. In other words, once the charge was enhanced to aggravated sexual abuse based on the age of the victim, an extended-term sentence on the same basis was inappropriate, as it constituted an unsanctioned double enhancement.

¶ 48 Therefore, A.R.'s age cannot form the basis of defendant's extended-term sentence.

¶ 49 *2. Prior Felony*

¶ 50 In addition to the victim's age, the State argued below that defendant was statutorily eligible for an extended-term sentence because less than 10 years' time elapsed between his prior conviction and the one in this case. The State's calculation of this period falls below 10 years only if the time defendant spent in custody, including his pretrial detention, is excluded; the State contends that the exclusion of this time is required by statute. Defendant argues, however, that his pretrial detention was solely due to his financial inability to post bond, meaning that the determining factor in his extended term eligibility was his lack of financial resources. Defendant argues that this constitutes a violation of the constitutional guarantee of equal protection of the law.

¶ 51 Before addressing the constitutional argument, however, we must examine its statutory predicate: that the time spent in pretrial detention on this case is excluded in calculating the 10 years between felony convictions. See *Johnson v. Department of State Police*, 2020 IL 124213, ¶ 13 ("cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort"). To the extent we engage in statutory construction while addressing defendant's arguments, our review is *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45. When construing a statute, our fundamental objective "is to ascertain and give effect to the legislature's intent." *Id.* The statute in question provides, in pertinent part, as follows:

"(b) The following factors, related to all felonies, may be considered by the court as reasons to impose an extended term sentence under Section 5-8-2 upon any offender:

(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, *excluding time spent in custody*, and such charges are separately brought and tried and arise out of different series of acts[.] " (Emphasis added.) 730 ILCS 5/5-5-3.2(b)(1) (West 2022).

¶ 52    The straightforward question of construction presented here is whether "time spent in custody" includes the time defendant spent in pretrial detention between the two convictions (*i.e.*, pretrial detention served in relation to the current case). If pretrial detention is not excluded, there is more than 10 years' time between convictions and defendant is not extended-term eligible; if the time is excluded, then the period of time is less than 10 years and defendant is extended-term eligible.

¶ 53    We begin by noting that in *People v. Robinson*, 89 Ill. 2d 469 (1982), the Illinois supreme court superficially *appeared* to answer this question but, for reasons we will explain, did not actually address it. In *Robinson*, the court was faced with the question of whether time spent in custody on a *federal* conviction was "time spent in custody" to be deducted from the 10-year calculation. *Id.* at 474-75. In doing so, the court interpreted a predecessor to the statutory provision at issue here which also contained the critical "time spent in custody" exclusion. *Id.* at 476. The court found "that 'time spent in custody' means time spent in any custody as the result of a

conviction of a federal crime or violation of another State's criminal statute." *Id.*; see Pub. Act 87-805, § 3 (eff. Dec. 16, 1991) (amending Ill. Rev. Stat. 1990, ch. 38, ¶ 1005-5-3.2) (addressing the specific question presented in *Robinson*—the applicability of a federal conviction—by way of amendment to the statute at issue).

¶ 54        Looking at the *Robinson* court's words outside of the context in which they were used, one might see an answer to the question presented here: if the statute excludes only "time spent in custody as the result of a conviction," then defendant's pretrial detention—time spent in custody *before* his conviction in this case—would not qualify. But we will not take the court's words out of context, as it addressed only what type of felony conviction would trigger application of the statute without ever having reason to consider whether time spent in pretrial detention would be excluded from the computation. " 'A judicial opinion is a response to the issues before the court *** [and] must be read in the light of the issues that were before the court for determination.' " *MB Financial Bank, N.A. v. Brophy*, 2023 IL 128252, ¶ 27 (quoting *Nix v. Smith*, 32 Ill. 2d 465, 470 (1965)); see also *People v. Palmer*, 104 Ill. 2d 340, 345-46 (1984) ("[T]he precedential scope of a decision is limited to the facts before the court.").

¶ 55        Consequently, we do not find *Robinson* to have precedential value on the specific issue presented here. We do find in *Robinson*, however, a clear articulation of the purpose of the statutory clause at issue which is very helpful to resolving the question presented:

> "This conclusion is reinforced by a consideration of the purpose of the extended-term provision. The aim of recidivist statutes is to impose harsher sentences on offenders whose repeated convictions have shown their resistance to correction. [Citation.] Realistically, one can assess an offender's tendency to recidivism only when, having served his sentence, he has returned to society; his

- 18 -

behavior while in custody can hardly be viewed as a reliable indicator of the likelihood of his committing another offense when released. Thus, though the General Assembly chose to create a 'statute of limitations' for the use of prior convictions to extend the sentence of a repeat offender, the limitation is itself limited, so that the incorrigible recidivist will remain subject to the extended term." *Robinson*, 89 Ill. 2d. at 476.

¶ 56    We believe the reasoning expressed in *Robinson* extends to exclude from the calculation of the limitations period pretrial detention on a charge that results in a conviction. The logic for excluding the time spent in pretrial detention from the limitations period mirrors that of excluding incarceration following a conviction: that behavior while in custody is an unreliable indicator of the likelihood of the defendant committing another offense when released. In other words, a defendant should have to prove his rehabilitation in the world at large, not while in custody. The plain language of the statute supports this conclusion, as it does not qualify that the time spent in custody must have been the result of a conviction in order to exclude the same from the relevant time period.

¶ 57    We also note that defendant's time spent in custody before conviction may have been "pretrial" detention at the time, but our current posture is retrospective. We know that defendant is entitled to credit against his sentence for the days spent in pretrial detention. 730 ILCS 5/5-4.5-100(b) (West 2022). In other words, we now know that defendant had effectively begun serving his sentence when in the county jail. This is another reason not to treat such time spent in custody any differently than time spent in custody after conviction.

¶ 58    Defendant attempts to read into the statute a limitation on the type of custody that is excluded from calculating the time period. See *People v. Legoo*, 2020 IL 124965, ¶ 14 (noting

where statutory language is clear and unambiguous it is to be applied as written without reading into the statute exceptions, limitations, or conditions that the legislature did not express). Rather, given its plain and ordinary meaning, "custody" would include pretrial detention. See Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/custody (last visited Nov. 3, 2023) [https://perma.cc/R56T-ETYN] ("immediate charge and control (as over a ward or a suspect) exercised by a person or an authority"). Further, other courts of review have distinguished *Robinson* in determining that "persons on parole are still within custody, and periods of parole are 'time spent in custody' " for purposes of calculating eligibility for extended-term sentencing. *People v. Abdullah*, 336 Ill. App. 3d 940, 955, (2002); see *People v. Burke*, 362 Ill. App. 3d 99, 104-05 (2005).

¶ 59    We therefore conclude that, consistent with the underlying purpose of the statute as discussed in *Robinson*, defendant's time spent "in custody" includes the time spent in pretrial detention on a charge that results in a conviction. Consequently, he is extended-term eligible because his two felony convictions were less than 10 years apart. This finding requires us to now address defendant's argument that this result is a violation of his constitutional right to the equal protection of the law because his pretrial detention was solely the result of his financial inability to post bond.

¶ 60    All statutes are presumed constitutional, and the party challenging a statute's constitutionality has the burden of rebutting that presumption and establishing a clear constitutional violation. *People v. Bochenek*, 2021 IL 125889, ¶ 10. In conducting an equal protection analysis, we apply the same standards under the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV) and article I, section 2 of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). *People v. Richardson*, 2015 IL 118255, ¶ 9. "The constitutional right

to equal protection guarantees that similarly situated individuals will be treated in a similar manner, unless the government can demonstrate an appropriate reason to treat them differently." *Id.* "The equal protection clause does not forbid the legislature from drawing proper distinctions in legislation among different categories of people, but the equal protection clause does prohibit the legislature from doing so based on criteria wholly unrelated to the legislation's purpose." *In re M.A.*, 2015 IL 118049, ¶ 24. When the legislative classification does not impact a fundamental right or discriminate against a suspect class, rational basis is the appropriate level of scrutiny to apply in determining whether the classification reveals a rational relationship between a legitimate governmental purpose and the classification. *Richardson*, 2015 IL 118255, ¶ 9.

¶ 61          Defendant acknowledges rational basis is the appropriate standard of review in this instance. He argues that he was extended term eligible only "because he lacked the financial means to secure his pretrial release from custody" and a rational basis is lacking for "distinguishing poorer people from wealthier people and setting different sentencing ceilings for the two groups."

¶ 62          Preliminarily, we note that it is unclear whether the record supports the factual premise of defendant's argument. Defendant posted bond in this case and was released from pretrial incarceration until he was charged in Whiteside County Case No. 19-CF-188. A review of court records in that case shows that he was charged with five counts of predatory sexual assault of a victim under the age of 13, all Class X felonies; one count of predatory sexual assault of a victim under the age of 13, a Class 1 felony; and two counts of aggravated criminal sexual abuse of a victim under the age of 13, both Class 2 felonies. See *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 12 n.3 (noting courts may take judicial notice of documents from readily verifiable sources of indisputable accuracy). Once charged in the other case, defendant filed a motion to exonerate bond in this matter, stating he would not be able to post bond in case No. 19-CF-188.

Realistically, we understand why defendant moved to exonerate the bond in this matter, as he would still be subject to imprisonment in his other case. See *People v. Arnhold*, 115 Ill. 2d 379, 383 (1987) ("[A] defendant who is out on bond on one charge, and who is subsequently rearrested and returned to custody on another charge, is not returned to custody on the first charge until his bond is withdrawn or revoked."). If defendant would not have moved to exonerate his bond, he would not have been credited for his detention pretrial on this case. Nonetheless, the fact that he posted bond in this matter and then moved to exonerate it—thereby placing himself back in county jail on the offense at issue—suggests that, at least as to this case, the reason he was in pretrial custody is not strictly due to his limited finances.

¶ 63        Turning to the merits of defendant's equal protection challenge, a classification is not arbitrary or unreasonable simply "because it is not made with mathematical nicety or because in practice it results in some inequality." (Internal quotation marks omitted.) *Heller v. Doe*, 509 U.S. 312, 321 (1993). The statute's purpose and design is not directed at persons of limited financial means, but to determine when a felony recidivist should be eligible for greater punishment. Because a defendant's "behavior while in custody can hardly be viewed as a reliable indicator of the likelihood of his committing another offense when released" (*Robinson*, 89 Ill. 2d. at 476), it is rational for the legislature to have deducted such time from the 10-year calculation. As noted above, defendant was not facing pretrial detention in this case due to his indigency but because the State was bringing additional charges; in other words, defendant's detention was likely due to possible recidivism while on release. We find the application of the statute neither arbitrary nor an invidious discrimination where defendant was facing multiple cases and could post bond in this case but not all cases resulting in his pretrial detention. Defendant has failed to carry his burden in overcoming the presumption of validity afforded to the classification and that the classification

is not reasonably related to a stated legislative purpose. *St. Joan Antida High School Inc. v. Milwaukee Public School District*, 919 F.3d 1003, 1010 (7th Cir. 2019); *Szczurek v. City of Park Ridge*, 97 Ill. App. 3d 649, 657 (1981).

¶ 64　　　　Accordingly, defendant's equal protection challenge as presented is without merit, as the statute is rationally related to the legitimate government purpose of punishing recidivists more severely.

¶ 65　　　　　　　　　　　C. Double Enhancement

¶ 66　　　　Finally, defendant argues that the trial court improperly relied on a factor inherent in the offense when crafting his sentence. He argues that where the court mentioned that it had considered A.R.'s age as an aggravating factor during sentencing, it enhanced his sentence based on a factor inherent in the offense, resulting in an impermissible double enhancement. Defendant again acknowledges procedural forfeiture but requests review under the second prong of plain error, as the alleged errors violated his right to a fair sentencing hearing and unjustly impacted his fundamental right to liberty.

¶ 67　　　　"It is well established that a factor inherent in the offense should not be considered as a factor in aggravation at sentencing." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22. The prohibition against "double enhancements" assumes that the legislature has already considered the aggravating factor in setting the penalty range for the charged offense. *People v. White*, 114 Ill. 2d 61, 65-66 (1986). "Whether the trial court relied upon an improper factor at sentencing is a question of law reviewed *de novo*." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 65.

¶ 68　　　　We first note that this court has outright rejected arguments similar to the one presented by defendant as not subject to plain error review. See *People v. McGath*, 2017 IL App

(4th) 150608, ¶ 68. Citing *People v. Ahlers*, 402 Ill. App. 3d 726, 733-34 (2010), and *People v. Rathbone*, 345 Ill. App. 3d 305, 310-311 (2003), the court in *McGath* explained that it is inappropriate to use the plain error doctrine as a general savings clause to preserve all errors affecting substantial rights that should have been presented in the first instance to the trial court. *McGath*, 2017 IL App (4th) 150608, ¶ 68-69. Simply stating that the fundamental right to liberty is involved does not transmute any error during sentencing into plain error. *Id.* Despite defendant's forfeiture, on this record, we are unable to find the trial court committed a clear or obvious error.

¶ 69 We find this court's prior decision in *People v. Raney*, 2014 IL App (4th) 130551, instructive. In *Raney*, the defendant was convicted of, among other things, aggravated battery (720 ILCS 5/12-3.05(d)(1) (West 2010)) where he knowingly caused harm to a person 60 years of age or older. *Raney*, 2014 IL App (4th) 130551, ¶¶ 1,4. On appeal, the defendant argued that the sentencing court improperly relied on the fact that the victim was 80 years old as a factor in aggravation, where the victim's age was already an element of the offense. *Id.* ¶ 33. This court stated that "[i]n cases where the victim's age is an element of the offense, the court does not err simply by mentioning the victim's age at sentencing, as it is relevant to the nature of the case." *Id.* ¶ 35 (citing *People v. Thurmond*, 317 Ill. App. 3d 1133, 1144 (2000)). Even if the sentencing court used the victim's age as an aggravating factor, error did not necessarily result where the exact age was relevant to the nature of the case and "our society considers sexual abuse of a much younger child even more reprehensible," rendering consideration of the age of the victim appropriate. *Id.* ¶ 37.

¶ 70 Courts of review have faced the same argument defendant poses numerous times in different contexts and have often opined that " ' "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant" ' "

may be considered at sentencing. *People v. Saldivar*, 113 Ill. 2d 256, 268-69 (1986) (quoting *People v. Hunter*, 101 Ill. App. 3d 692, 694 (1981), quoting *People v. Tolliver*, 98 Ill. App. 3d 116, 117-18 (1981)). We do not find the trial court's consideration of A.R.'s age at the time of the offense any different. Moreover, as noted above, we agree that A.R's age is not a basis for making defendant extended-term eligible. Still, the court was free to consider A.R.'s age for purposes of imposing a sentence within the enhanced range. To hold otherwise would force the court to ignore the nature and circumstances of the offense when imposing a sentence. See *id.*

¶ 71                                    III. CONCLUSION

¶ 72          For the reasons stated, we affirm the trial court's judgment.

¶ 73          Affirmed.

*People v. Shaw-Sodaro*, 2023 IL App (4th) 220704

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Whiteside County, No. 18-CF-366; the Hon. Patricia Ann Senneff, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, Nancy L. Vincent, and Roxanna A. Mason, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Terry Costello, State's Attorney, of Morrison (Patrick Delfino, David J. Robinson, and Matthew S. Goldman, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |