NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230102-U

NO. 4-23-0102

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 20, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Ogle County |
| MATTHEW HOOD, | ) | No. 18CF63 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John C. Redington, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed defendant's sentence because the trial court
did not engage in an improper double enhancement.

¶ 2    In February 2021, defendant, Matthew Hood, was charged with two counts of

aggravated domestic battery (720 ILCS 5/12-3.2(a)(1), 12-3.3(a), (a-5) (West 2018)). In August

2022, following a bench trial, defendant was found guilty of both counts. The trial court

sentenced defendant to 48 months of probation and 180 days of periodic imprisonment.

¶ 3    Defendant appeals, arguing that the trial court improperly considered "serious

harm"—a factor he argues is inherent in the offenses—as a factor in aggravation. We disagree

and affirm defendant's sentence.

¶ 4                                   I. BACKGROUND

¶ 5                            A. The Charges and Bench Trial

¶ 6    In February 2021, the State charged defendant with two counts of aggravated

domestic battery (*id.*), a Class 2 felony (*id.* § 12-3.3(b)). Count I alleged that defendant strangled Heather Hood and count II alleged that he fractured a bone in her left shoulder when he threw her to the ground.

¶ 7    In August 2022, the trial court conducted defendant's bench trial. Heather testified that she had been married to defendant from 2009 to 2019. On the day of the offenses, she was sleeping when defendant woke her up, yelling about the spare phone that defendant did not previously know about. Heather testified that defendant pulled her out of bed by her wrist, then took her other phone and keys from her. When she tried to get them back, defendant threw her against the wall, causing her to feel "extreme pain" in the back of her shoulders and back. She testified that, in the living room, defendant threw her to the ground, causing her to land on back of her head. She testified that she felt more "extreme pain" and blacked out for about 30 seconds. When she regained her senses, she wanted to call the police and tried to get her phone from defendant. Defendant "grabbed [her] by the neck with both hands, threw [her] down right by the table, and squeezed as hard as he could." Heather testified that it was hard for her to breathe, and she believed he was going to kill her. When defendant stopped squeezing, he left the house, and she locked the door behind him. However, defendant forgot his keys and broke the door to come back in and retrieve them. He then left and drove away, and Heather called 911.

¶ 8    Heather identified several photographs, some of which showed her injuries, including a bruise on her neck and torn skin on her hand. One photo depicted her wearing a sling she received at the hospital to wear until she could see an orthopedic doctor. Heather also testified that in February 2018, prior to the offenses, she had undergone surgery to repair a torn left bicep tendon that resulted when she lifted a patient at work. After defendant threw her against the wall in April 2018, she required physical therapy, cortisone shots, and another

surgery to treat the injury to her left shoulder.

¶ 9         Dr. Joshua Alpert, an orthopedic surgeon, testified that he treated Heather for left shoulder pain following the April 2018 incident. Conservative treatments, such as physical therapy and cortisone treatments, did not alleviate her pain. In May 2019, Alpert performed arthroscopic surgery on Heather's left shoulder and found a loose, fractured piece of her shoulder bone that he removed. He testified that the fractured piece of shoulder bone had not been present when he performed surgery on her left bicep in February 2018.

¶ 10         Defendant testified that on the day of the offenses, Heather had left her purse sitting on a table. A phone began ringing in her purse. He answered the phone and realized that it was not her personal phone connected to their shared account. Defendant did not recognize the name of the caller, but later testified that it was "Paul," a man with whom Heather had cheated on defendant multiple times. He went to the bedroom to wake Heather up and ask her why she had a spare phone and why Paul was calling. Defendant stated he was "mad and yelling," and he asked her to pack her things and leave the house.

¶ 11         Defendant testified that, although they argued, he did not make physical contact with Heather. To the contrary, he stated that she jumped on his back while he got his clothes from the dresser. He had to "shove[ ] her off" his back so he could continue packing. When he did this, "she kind of fell backwards." Defendant stated that Heather then followed him all over the house as he packed his things. She jumped on his back again while he was trying to leave, and he "kind of shoved her off [of him] again, and that's when she fell in the kitchen."

¶ 12         Defendant denied putting his hands on Heather's neck. He left the house with his suitcase, then remembered his keys were in the kitchen. When he tried to retrieve them, he learned the door was locked, so he shoved it with his shoulder and broke it open. He grabbed his

keys, then returned to his truck. As he was walking out, Heather jumped into her car and tried to block his truck from leaving, so he had to drive through the yard to get away.

¶ 13        The trial court found defendant guilty of both counts, noting in particular that the photos of Heather's injuries and the doctor's testimony about the nature of the injury corroborated Heather's version of events more than defendant's version. The court also pointed to the evidence of the broken door, noting that the damage indicated that he was "angry" and "out of control," which bolstered Heather's credibility over defendant's credibility.

¶ 14                            B. The Sentencing Hearing

¶ 15                            1. *The Evidence and Arguments*

¶ 16        In October 2022, the trial court conducted a sentencing hearing. There, Heather read her victim impact statement, which noted that: (1) she continues to remember being strangled, (2) the damage from the incident resulted in countless doctor's visits, medication, and a surgery, (3) she continues to require care to address ongoing pain, (4) she suffers financial difficulties due to cost of medical treatment and time missed from work due to medical treatment, (5) the mental and emotional impact of the incident has caused her extreme sadness, depression, and anxiety, (6) her 9-year-old son began to have nightmares about his father hurting Heather and told his primary care physician that he contemplated suicide as a result, (7) her 12-year-old son ran away from home "because he was plagued by thoughts of his father being a bad man," which prompted her to place him in intensive outpatient therapy, and (8) that she and these two children continue to receive therapy due to defendant's actions. Heather also stated that she has been having seizures since two months after her head injury. She testified that defendant had battered her "many" times before and that defendant had strangled her previously in 2010, when she was four months pregnant with their middle son after getting into an argument.

- 4 -

¶ 17  Defendant's girlfriend of four years testified that (1) he continues to support her and her children financially and emotionally, (2) his children and her children get along like siblings, (3) he avoids all confrontation, and (4) he did not act physically during the one argument they had in the four and a half years they had known each other.

¶ 18  Defense counsel argued that defendant received online counseling from 2018 to 2019 and had maintained employment to support his girlfriend and her children, as well as his own children. Counsel also noted that imprisoning defendant would result in loss of employment and that he is currently taking care of two different households at the same time.

¶ 19  2. *The Trial Court's Imposition of Sentence*

¶ 20  The trial court first noted that it had reviewed the trial evidence, the presentence investigation report, and the evidence and arguments at the sentencing hearing. Next, the court sentenced defendant as follows:

"First of all, conviction will be entered against the defendant as to both Counts I and II. The court finds in these cases that under 730 ILCS 5/5-5-3.1, the following factors in mitigation should be considered.

That would be Factor No. 1—Or excuse me. I find no factors in mitigation that apply. The Court does find under 5-3.2, the factors in aggravation, that Factor No. 1 applies, that his conduct caused or threatened serious harm. And Factor No. 3 applies, that the defendant has a history o[r] prior history o[f] criminal activity.

Based upon all of that, I will say as follows:

[Defendant], I understand your attorney's argument that you had a bad day that day. But I would have expected that if you had a bad day that day that led to you kicking in the door, the marks on the neck, the marks on the arm, things that

- 5 -

happened that day that don't happen or should never happen, that you would have availed yourself of whatever counseling would have been necessary immediately to ensure that if you had another bad day you couldn't go to that place again. And you didn't do that. And so that causes me some concern about your willingness to fix yourself. And you need to be fixed.

However, you do have responsibilities. Your record is not horrendous. And at this point I think the State's recommendations are very well found[ed].

Based upon that, in each count I'm going to put you on a period of 48 months' probation. ***

* * *

You're going to serve 180 days in the county jail. That will be a periodic imprisonment sentence, so you'll be able to work. ***

* * *

I'm going to give you a pretty light payment plan [on fines and fees] because I want you spending all your money on your kids. *** I won't even have you paying it while you're in jail."

¶ 21    This appeal followed.

¶ 22                        II. ANALYSIS

¶ 23    Defendant appeals, arguing that the trial court improperly considered "serious harm," a factor he argues is inherent in the offenses, as a factor in aggravation. We disagree and affirm defendant's sentence.

¶ 24    As an initial matter, defendant concedes that he failed to preserve the alleged error but argues that his forfeited claim is reviewable under the plain-error doctrine. The usual first

step under the plain-error analysis is to determine whether defendant has shown the occurrence of a clear or obvious error at all. *People v. Walker*, 232 Ill. 2d 113, 124, 902 N.E.2d 691, 697 (2009). Accordingly, the issue before us in this case is whether the court committed error by considering the serious harm defendant caused as an aggravating factor during sentencing. See *People v. Thomas*, 2019 IL App (2d) 160767, ¶ 14, 127 N.E.3d 1080.

¶ 25                    A. The Applicable Law and the Standard of Review

¶ 26        "It is well established that a factor inherent in the offense should not be considered as a factor in aggravation at sentencing." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22, 979 N.E.2d 1014. "The prohibition against 'double enhancements' assumes that the legislature has already considered the aggravating factor in setting the penalty range for the charged offense." *People v. Shaw-Sodaro*, 2023 IL App (4th) 220704, ¶ 67.

¶ 27        A trial court may consider a defendant's conduct to constitute an aggravating factor if that "conduct caused or threatened serious harm." 730 ILCS 5/5-5-3.2(a)(1) (West 2018). "When considering if the defendant 'threatened serious harm,' the sentencing court compares the conduct in the case before it against the minimum conduct necessary to commit the offense." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 67, 129 N.E.3d 755.

¶ 28        "Whether the trial court considered an improper double enhancement when sentencing a defendant is a question of law, which we review *de novo*." *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 31, 99 N.E.3d 571. "There is a strong presumption the trial court based its sentencing determination on proper legal reasoning." *Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22. The weight given to any aggravating factor, however, is a matter of the trial court's sound discretion and will not be disturbed absent an abuse of that discretion. *People v. Gooch*, 2014 IL App (5th) 120161, ¶ 11, 18 N.E.3d 175.

¶ 29                                    B. This Case

¶ 30        Defendant asserts that "serious bodily harm" is inherent to both theories of

aggravated domestic battery—namely, through (1) strangulation and (2) causing great bodily

harm. Accordingly, defendant argues that the trial court erred by applying the "serious harm"

factor in aggravation (730 ILCS 5/5-5-3.2(a)(1) (West 2018)) because the "faint" bruising of

Heather's neck and the bone fracture in her shoulder do not rise above a baseline level of harm

already contemplated in the first and second counts, respectively. We disagree.

¶ 31        Defendant's improper double enhancement argument fails because the record

shows a strong basis for the trial court to have found harm above the minimum necessary to

establish the elements of the two aggravated domestic battery counts pursuant to section

12.3.3(a), (a-5) (*id.* § 12-3.3(a), (a-5)); see *Hibbler*, 2019 IL App (4th) 160897, ¶¶ 69-71.

¶ 32        Starting with the first count, although both parties accept that there is a baseline

for "great bodily harm" (the element) that the "serious harm" (the aggravating factor) must rise

above, neither party defines that baseline. Generally, "great bodily harm" is described as more

serious than ordinary battery, which "requires a showing of 'some sort of physical pain or

damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent.' "

*People v. Daniels*, 2016 IL App (4th) 140131, ¶ 101, 58 N.E.3d 902 (quoting *People v. Mays*, 91

Ill. 2d 251, 256, 437 N.E.2d 633, 635-36 (1982)). In the present case, Heather's injury exceeded

the minimum necessary to establish great bodily harm. Defendant caused a bone fracture in

Heather's shoulder that required surgery, and she required continued care to restore function and

to address pain, which continued to trouble her for years after the battery.

¶ 33        For the second count, the statute provides the minimum necessary conduct by

defining what "strangle" means: "intentionally impeding the normal breathing or circulation of

the blood of an individual by applying pressure on the throat or neck of that individual or by blocking the nose or mouth of that individual." 720 ILCS 5/12-3.3(a-5) (West 2018). Again, defendant's conduct exceeded the minimum necessary to establish strangulation. Defendant straddled Heather and choked her for long enough and strongly enough to leave bruises.

¶ 34     For both counts, the trial court did not err by determining that defendant caused or threatened to cause serious harm as an aggravating factor based on those facts. Importantly, however, the record contains even more facts to support the court's finding. As we noted in *People v. Ehrich*, 165 Ill. App. 3d 1060, 1075, 519 N.E.2d 1137, 1146 (1988), psychological or emotional trauma is an appropriate consideration within an analysis of "harm" as an aggravating factor.

¶ 35     Defendant's conduct continued to haunt Heather and their children for years after the injury took place. Although defendant's reply brief did not respond to the State's arguments pointing out the psychological harm that haunted Heather and their children, we agree that their ongoing mental and emotional suffering, which requires them to attend therapy, was also sufficient to allow the trial court to find that "serious harm" applied as an aggravating factor.

¶ 36     In the end, defendant's claim of error fails because the trial court's decision did not amount to an improper double enhancement. Absent clear or obvious error, plain error is not warranted, and we need not reach either prong of the plain-error analysis.

¶ 37                          III. CONCLUSION

¶ 38     For the reasons stated, we affirm the trial court's judgment.

¶ 39     Affirmed.