NOTICE
Decision filed 10/02/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230517-U

NO. 5-23-0517

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CF-843 |
| | ) | |
| WENDY D. ADAMS, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Presiding Justice Vaughan and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the trial court's judgment where the trial court did not improperly consider a factor inherent in the offense and the trial court's sentence was not excessive.

¶ 2    On April 18, 2023, the defendant, Wendy D. Adams, pled guilty to one count of aggravated battery in violation of section 12-3.05(b)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-3.05(b)(1) (West 2020)). The defendant was sentenced on May 31, 2023, to 20 years' incarceration within the Illinois Department of Corrections (IDOC). The defendant filed a motion to reconsider sentence which was denied by the trial court. The defendant filed a timely notice of appeal and now challenges her sentence. On appeal, the defendant argues that her 20-year sentence is excessive given her age, lack of criminal history, mental health diagnoses, and rehabilitative potential. The defendant further contends that the trial court abused its discretion at sentencing by

relying on a factor, great bodily harm to the victim, inherent in the offense. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4      On July 20, 2021, the defendant was charged with two counts of aggravated battery in violation of section 12-3.05(b)(1) of the Code (*id.*), both nonprobational, Class X felonies, and one count of aggravated battery in violation of section 12-3.05(b)(2) of the Code (*id.* § 12-3.05(b)(2)), a Class 3 felony. The charges alleged that the defendant had, between January 1, 2021, and July 18, 2021, knowingly caused bodily harm to M.W., a minor under the age of 13. In count I, the State alleged the defendant struck M.W. with an object causing scars with lines and loop marks on or about her legs and back. In count II, the State alleged the defendant cut M.W. with a knife-like object causing scars on or about her arms, legs, stomach, and back. In count III, the State alleged the defendant struck M.W. on or about her eye, with her hand.

¶ 5      The defendant appeared with appointed counsel in court on July 20, 2021, and the trial court fully admonished the defendant regarding the charges, her rights, and that both counts I and II were Class X felonies which could result in a sentence to the IDOC for a term between 6 and 30 years, followed by a 3-year term of mandatory supervised release. On August 17, 2021, the defendant's attorney raised the issue of the defendant's fitness to stand trial and whether she lacked the substantial capacity to appreciate the criminality of her conduct at the time of the offenses. The trial court entered an order for an evaluation on August 19, 2021, appointing Dr. Lawrence Jeckyl to examine the defendant. Ultimately, the defendant was found fit to stand trial and the matter proceeded accordingly.

¶ 6      On April 18, 2023, the defendant waived her right to a jury trial and entered an open plea of guilty to the count I charge of aggravated battery causing great bodily harm to M.W. by striking

her with an object causing scars with lines and loop marks on or about her legs. The trial court again fully admonished the defendant including, *inter alia*, that the Class X felony carried with it a mandatory sentence of incarceration that could be between 6 to 30 years, to be served at 85%, followed by 3 years of mandatory supervised release. In exchange for the plea, the State agreed to dismiss the remaining counts. After being fully admonished by the trial court, the defendant indicated that she wished to plead guilty, and the factual basis was presented to the trial court.

¶ 7 The factual basis provided by the State indicated that the Urbana Police Department was dispatched to the defendant's residence after a welfare call came in concerning M.W. Upon arrival, officers observed M.W. and immediately saw welts, scars, and burn marks covering her arms. The officers also observed M.W. to have a black eye and burn marks on her feet. When M.W. was asked about what occurred, she indicated that her mother (the defendant) did it. Officers were also able to observe scars of various lengths, sizes, and shapes on M.W.'s back. M.W. again indicated that her mother had caused all the harm. M.W. showed officers additional circular scars around her knees. Officers took photographs of M.W.'s injuries, including injuries to her head, face, neck, arms, chest, belly, legs, feet, back, and shoulders. The injuries were consistent with those caused by cutting instruments, burns, and some type of flexible object capable of looping or wrapping around the body.

¶ 8 M.W. was transported to a hospital, where it was determined that she had healing radius and ulna fractures. There were no records of M.W. ever being treated for any of her injuries. During an interview conducted by the Child Advocacy Center (CAC), M.W. disclosed that her mother had caused her injuries. M.W. indicated that the defendant had used two knives to cut M.W. and had punched her in the eye.

¶ 9    At the close of the guilty plea, the trial court ordered a presentence investigation report (PSI) to be completed and set the matter for sentencing hearing. The sentencing hearing was held on May 31, 2023. The State's first witness, Kylie Schutte, testified that she was a child protection specialist with the Illinois Department of Children and Family Services (DCFS) assigned to M.W.'s DCFS case. When the matter was brought to her attention, M.W. was six years old. Schutte was the responding caseworker who took M.W. to the hospital to be examined. While at the hospital, M.W. did not make eye contact with anyone and any time a new person entered the room, M.W. would often be startled. Schutte described two occasions wherein M.W. stole food and hid in a corner to eat it. M.W. was very nervous and scared.

¶ 10    Schutte looked over M.W.'s entire body and took photos of every injury. Schutte described the time it took to document the overwhelming number of injuries M.W. had on her body. Two healing bone fractures on M.W.'s arm were also discovered during this examination and the hospital indicated that it had no records of M.W. ever being treated for any injuries. Schutte then testified regarding M.W.'s CAC interview. During the interview, M.W. disclosed that the defendant had used two knives as the instruments that caused her harm. Schutte also testified that there were previous DCFS investigations that were indicated against the defendant, one involving physical abuse and one involving neglect. The defendant previously had five children removed from her care.

¶ 11    The State next called Sergeant David Roesch of the Urbana Police Department. Sergeant Roesch testified that he was assigned to investigate a case of abuse involving M.W. When Sergeant Roesch arrived at the defendant's home, the defendant told officers that she knew why they were there, and that M.W. and her four-year-old brother would get into fights. Sergeant Roesch described the multiple injuries observed on M.W., in different phases of healing, including

4

scratches, cuts, burn marks, whip marks, linear marks, and a black eye. M.W. indicated that the defendant had caused the injuries.

¶ 12    Sergeant Roesch testified that when officers questioned the defendant regarding the black eye, the defendant offered various explanations. The defendant said that her husband had passed away, and because of that, M.W. began to self-harm. The defendant suggested that M.W. may have punched herself in the eye, and also that it could have been M.W.'s sibling, grandmother, or the defendant's boyfriend that caused the injuries. Officers also questioned James Brown, who informed them that he was staying with the defendant for two months and had an agreement with the defendant that he would not ask about M.W.'s black eye. Brown told the officers that M.W. told him that the defendant caused the black eye and stated that the defendant "doesn't like me any more."

¶ 13    Sergeant Roesch took photographs of M.W.'s injuries. He noted that the photographs showed marks on M.W.'s head, shoulders, neck, face, chest, belly, back, legs, buttocks; burn marks on her feet; numerous looping marks that appeared to be caused by a cord of some sort; several cut marks; and a black eye. The marks were in different phases of healing. Forty-four photographs were admitted into evidence showing M.W.'s injuries, labeled People's Group Exhibit 1. Sergeant Roesch testified that he was present during the CAC interview, wherein M.W. stated that the defendant was responsible for the injuries and further explained that the cuts were from two knives, one with a brown handle and a second that was drawn with a pink and green crayon. A steak knife with a pink and green floral handle was admitted into evidence, as well as a laboratory report showing M.W.'s DNA found on the blade.

¶ 14    Sergeant Roesch testified that he interviewed the defendant after her arrest. The defendant again stated that M.W. was involved in self-harm and that someone else might be responsible for

5

M.W.'s injuries, such as the defendant's mother, the defendant's boyfriend, or Brown. When confronted with the photographs of M.W.'s injuries, the defendant admitted that she had never observed M.W. harm herself. Further, when Sergeant Roesch asked the defendant why she did not photograph, video, or document M.W.'s injuries, or take M.W. to the hospital, the defendant gave no response.

¶ 15    The State's final witness was Detective Brad Wakefield of the Champaign County Sheriff's Department. Detective Wakefield indicated that he was assigned to investigate a sexual assault allegation that occurred at the county jail. The defendant was the suspect in two reported incidents by a victim who was the defendant's cell mate. According to Detective Wakefield, it was reported that the defendant performed oral sex on the victim during a lock down period despite the victim's refusal and lack of consent. The second incident involved a similar situation where the defendant removed the victim's clothes, demanded that the victim perform oral sex on the defendant, but the victim declined. This prompted the defendant to threaten the victim with something to the effect of "I will hurt you."

¶ 16    The defendant did not call any witnesses but offered a Rosecrance[1] report labeled as Defendant's Exhibit 1 for the trial court's consideration in mitigation, showing her completion of anger management classes at the Champaign County jail. The trial court then heard arguments by counsel. The State noted that there was a long history of abuse and neglect involving the defendant's children and that the defendant's parental rights had been terminated for each of her other five children. Further, the defendant had a long history of alcohol and drug use, and unemployment. The State argued that the defendant's substance abuse problems could be considered as mitigation, but also in aggravation since it caused the neglect of her children. The

---

[1]Rosecrance is a provider of behavioral health services serving clients in Illinois.

State referenced the fitness report of Dr. Jeckyl arguing that it was unclear whether the defendant suffered from actual mental illnesses or from her decades of drug abuse. The State directed the trial court to the photographs of M.W.'s injuries admitted into evidence indicating that there "is not an inch of her body that is not covered in absolutely brutal and heinous scars." The State argued the photographs depicted "nothing short than systemic torture of her own child" that "has progressively gotten worse over decades with her children being removed." The State asked the trial court to consider the impact that the severe injuries will have upon M.W. as she grows up and the fact the scars will be ever present. The State requested the trial court sentence the defendant to the maximum sentence of 30 years' imprisonment.

¶ 17    In mitigation, defense counsel argued that the defendant spared M.W. and her other children the pain of going through a jury trial and that the defendant had accepted responsibility for her actions by pleading guilty. Defense counsel noted that the PSI detailed the defendant's own background of neglect, abuse, and mental illness that resulted in her living on the streets of Chicago and led to her gang affiliation. Further, defense counsel argued that the defendant had been diagnosed with numerous mental health issues but had never received the proper treatment; rather, she lived unmedicated and spiraled into drug addiction. Accordingly, defense counsel argued the defendant needed treatment, counseling, and abuse therapy. Defense counsel argued that the defendant had voluntarily been assessed and enrolled in numerous treatment programs and courses while in custody. The defendant suffered from untreated mental health issues and drug addiction as well as her own unresolved trauma. The defendant, while incarcerated, sought treatment including anger management classes and underwent an assessment by Rosecrance for the purposes of determining her diagnosis and recommended treatment. Defense counsel noted that the defendant had no criminal history, other than traffic violations. Defense counsel also argued that

7

it was unlikely that the defendant would ever hurt anyone else as she was unlikely, based on her age, to have more children, and she was not a violent person towards others. Further, the defendant's voluntarily terminating her parental rights as to M.W. should be considered in mitigation rather than aggravation. Defense counsel acknowledged the heinousness of the offense but argued that a six-year sentence would be more appropriate to make the defendant a valuable member of society. The trial court offered the defendant the opportunity to make a statement, but the defendant declined.

¶ 18    The trial court considered the PSI, the evidence presented, the arguments of counsel, and all the statutory and nonstatutory factors in aggravation and mitigation, whether specifically noted or not. In giving its ruling, the trial court stated as follows:

> "I have a regard for the seriousness of the offense. I'm also aware of the defendant's history and character. This is always with the objective of restoring her to useful citizenship. The court makes the following observations and findings.
>
> There is mitigation in this case. Defendant did plead guilty, she did take responsibility. It is common for people who are at first investigated for crimes to deny actions and later take responsibility for their actions, so I do count this as mitigation that she did take responsibility and plead guilty.
>
> That has allowed the minor child to be spared from having to come into open court and testify against her mother.
>
> She is 43 years old, and other than traffic cases, has no criminal record. She has been actively engaged in classes and other programming since she's been in the jail. I've reviewed the records from Rosecrance.

There is aggravation here. There is the deterrent message, to send a message to [the defendant] that this kind of conduct cannot be continued, as well as send a message to people in the community who might be in the same situation, that they should not commit crimes like this.

I would also note that there is aggravation here in terms of the evidence that was heard here today. I don't give tremendous weight to the testimony of Detective Wakefield, not because I don't believe him, I believe every word he said. But when I look at the totality of the circumstances in which that victim never complained about this particular incident, moved in and out of the room with the defendant and the like, I'm not sure if it was consensual or not consensual. Apparently she said to the defendant the first time no, I don't want to do this. So it is somewhat aggravating, I'm just not giving it much weight, based on the totality of the circumstances.

But I did hear testimony from the other witnesses which basically described more in detail the facts and circumstances of this offense. I want to be clear that I cannot consider facts that are inherent in the offense, such as the defendant being over 18, the victim being under the age of 13, and causing great bodily harm to the victim. However there were a lot of facts outside what it is alleged in count one that I think goes beyond the charge that makes aggravation here.

I saw the photographs, I've heard the testimony. It's crystal clear that this defendant, over the course of time, so it wasn't a one-time thing. Some of these injuries were healing, some were healed, some were fresher. So it occurred over

9

time, and it occurred in all types and manners; with burns, whips, cuts, and it literally took place from head to foot.

And I agree with [the assistant state's attorney], your first thought is pictures you see from the Civil War of slavery, of people being whipped. But even in movies where they're depicting this, I've never seen images like I did in those photographs of the number of injuries, the types of injuries, the variety of injuries, the number of types of items used, and the entire body.

It was almost as if they were photographs out of a horror movie. So there are multiple objects over time, different kinds of injuries, including knives; these injuries, many of which will be permanent for this child.

I think those are all factors that are beyond the four corners of count one. I would also note that the defendant has been investigated by DCFS for perhaps 20 years or so with other children. I commend her for voluntarily surrendering her rights. It could be she did it because she wanted to look out for the welfare of her children. It could be because she knew she might lose. I don't know, but I—I do give her credit for surrendering her rights. But there have been incidents with her and her children with substances and the like, that she's had issues around her children for many years.

I would also note and I do find this somewhat compelling, that [the defendant's] older son, who's in his twenties, who had a warrant for his arrest, actually called the police because he was so concerned about his is [*sic*] six-year-old sister. I find all of these factors aggravating.

It is absolutely clear that [the defendant] has had a very difficult upbringing herself. There was sexual abuse, physical abuse, she wasn't able to get through high school. She had to join a gang. She has a number of children. Her rights have been terminated. She's only been able to work off and on throughout her life. She has medical problems. She's had a tough life. But not every person who has a tough life, not every person who suffers trauma turns around and commits trauma towards other people.

There have been people in her life who have wanted her to do better. I'm sure [the defendant] isn't an evil person, but she seriously—she has serious mental health issues. Dr. Jeckel's report that says it's controlled or in remission since she's been in custody. So I do agree with [defense counsel] to some degree that even though she does suffer from mental health issues, and she does need medication, it's exacerbated by the fact that she uses drugs, and a wide variety of drugs and alcohol, and she's not always being medicated for the mental health issues.

And when she has mental health issues, isn't medicated, and is using illegal drugs on top of the fact that she has her own trauma, and problems, and anger control issues, she was a time bottom [*sic*] ticking, waiting to go off, and it went on of[f] in early 2021.

There's no evidence that she abused, the other children may have been in the home at the time. She took it out on [M.W.]. [M.W.'s] own statement, I think it was the CAC is 'My mom doesn't like me,' or 'doesn't love me any more.'

I'm not sure what a six-year-old child could do to warrant any kind of abuse, but certainly this type of abuse as I've described.

11

This is a preventable offense. [The defendant], though she has taken responsibility for her criminal actions, has no criminal record, spared her family from testifying, including the six-year-old those are to be credited towards [the defendant].

But there is serious aggravation here. The fact and circumstances beyond the charge itself, the substance abuse issues, the mental health issues, this is a mandatory prison sentence. The State is seeking the maximum. I can't do that, frankly, because there is mitigation here. She pled guilty, she's taken responsibility she essentially has no criminal record. The defense is asking for the minimum of six years. That's not warranted, either, based on the severity of the offense. I know it's a Class X and it's a range of six to 30, but based on everything I've said here, I don't think the minimum is appropriate as well."

¶ 19 The court sentenced defendant to 20 years' of incarceration in IDOC with a 3-year term of mandatory supervised release. The trial court stated the term of incarceration would be served at 85% and that the defendant was entitled to 682 days credit for time served.

¶ 20 On June 27, 2023, the defendant filed a motion to reconsider sentence, and a hearing was held on August 16, 2023. The defendant argued that her sentence was excessive and should be reduced because the trial court did not give sufficient weight to the mitigation when compared to the aggravation, and that the nature and extent of the injuries to M.W. that were considered by the trial court were inherent to the charge. The trial court reiterated that it considered various factors in aggravation, including deterrence, the fact that the defendant was in a position of trust with M.W., and the facts of the case outside of the charge itself, such as the fact that there were multiple objects used over time, knives, belts, and hands. The trial court reiterated that the photographs of

12

M.W.'s injuries looked like they came from a horror movie with "burns, whip marks, scratches, and the like." The trial court denied the defendant's motion to reconsider sentence. Thereafter, the defendant filed a timely notice of appeal.

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, the defendant argues that her case should be remanded for resentencing because her 20-year sentence is excessive given her age, lack of criminal history, mental health diagnoses, and rehabilitative potential, and was improperly based on a factor inherent in the offense—great bodily harm.

¶ 23    First, we note that the defendant failed to raise the issue that the trial court improperly relied on a factory inherent in the offense in her postplea motion, which challenged the sentence as excessive. The defendant argues that she raised the issue below by raising the general issue regarding excessive sentencing. In the alternative, the defendant requests that we review any potentially forfeited issue as plain error and ineffective assistance of counsel. The State, while mentioning forfeiture as it relates to excessive sentencing, did not argue that the defendant forfeited the issue regarding the trial court's consideration of an error inherent in the offense. The State simply argues that this court need not consider plain error or ineffective assistance of counsel where there was no error in the trial court. Because forfeiture is a limitation on the parties and not the court, in the exercise of our discretion we will address the defendant's argument. *People v. Custer*, 2019 IL 12339, ¶ 19.

¶ 24               A. Consideration of an Element Inherent in the Offense

¶ 25    First, we will consider the defendant's contention that the trial court improperly relied on serious bodily harm as a factor in aggravation based on M.W.'s injuries. The defendant contends

13

that where great bodily harm was a factor inherent in the offense, it was improper for the trial court to consider in aggravation that she caused serious bodily harm to M.W.

¶ 26    The defendant was convicted of aggravated battery to a child, causing great bodily harm, a Class X felony, punishable by 6 to 30 years in prison. 720 ILCS 5/12-3.05(b)(1), (h) (West 2020); 730 ILCS 5/5-4.5-25(a) (West 2020). Absent the finding of "great bodily harm," aggravated battery to a child, causing "bodily harm" is a Class 3 felony, punishable by two to five years in prison or probation. 720 ILCS 5/12-3.05(b)(2), (h) (West 2020); 730 ILCS 5/5-4.5-40(a), (d) (West 2020). To establish great bodily harm, the State alleged that the defendant struck M.W. "with an object causing scars with lines and loop marks on or about her legs and back" between January 1 and July 18, 2021. The other counts, which alleged cutting M.W. with a knife-like object causing scars on or about her arms, legs, stomach, and back, and striking her with a closed fist in her face, were dismissed pursuant to the plea agreement.

¶ 27    The defendant argues that the State's factual basis to support the charge included that M.W. had injuries covering her entire body, which "were consistent with having been received by cutting instruments, burns, and possibly a flexible object capable of looping or wrapping around body parts." According to the defendant, the trial court considered the same harm in aggravation at sentencing, stating that the injuries occurred over time "in all types and manners; with burns, whips, cuts, and it literally took place from head to foot." The defendant contends that the statutory range already accounted for M.W.'s injuries, as great bodily harm is the reason the offense was elevated from a Class 3 felony to a Class X felony, *i.e.*, it was the reason the defendant's sentencing range was 6 to 30 years in prison and not 2 to 5. Accordingly, the trial court could not use this factor to further increase the defendant's sentence. The State, however, argues that the trial court

14

appropriately considered the degree of harm inflicted on M.W., which may be considered even where serious bodily harm is implicit in the offense.

¶ 28    A trial court's sentencing decision which falls within the statutory sentencing range will generally not be disturbed on appeal absent an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). It is well established, however, that a factor inherent in the offense should not be considered as a factor in aggravation at sentencing. *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22. The prohibition against "double enhancements" assumes that the legislature has already considered the aggravating factor in setting the penalty range for the charged offense. *People v. Shaw-Sodaro*, 2023 IL App (4th) 220704, ¶ 67. The rule, however, should not be applied rigidly, because public policy requires that a sentence be varied according to the circumstances of the offense. *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 15.

¶ 29    Whether the trial court based its sentence on its consideration of an improper factor is reviewed *de novo*. *People v. Phelps*, 211 Ill. 2d 1, 12 (2004). The burden is on the defendant to affirmatively establish that the sentence was based on improper considerations. *People v. Dowding*, 388 Ill. App. 3d 936, 942-43 (2009). In conducting our review, we begin with "a strong presumption" that the trial court based its decision on proper legal reasoning and, in reviewing that decision, we will consider "the record as a whole, rather than focusing on a few words or statements." (Internal quotation marks omitted.) *People v. McGath*, 2017 IL App (4th) 150608, ¶ 64.

¶ 30    A trial court may consider a defendant's conduct to constitute an aggravating factor if that "conduct caused or threatened serious harm." 730 ILCS 5/5-5-3.2(a)(1) (West 2020). The trial court is to examine the nature and circumstances of the offense, including the nature and extent of each element of the offense committed by the defendant. *People v. Hibbler*, 2019 IL App (4th)

160897, ¶ 67. The commission of any offense, even those that deal with harm themselves, can have varying degrees of harm or threatened harm. *Id.* The severity of a sentence depends, in part, on the degree of harm caused to the victim and, as such, may be considered as an aggravating factor in determining the exact length of a particular sentence, even in cases where serious bodily harm is implicit in the offense. *Id.* The sentencing court's attention should be "directed at the degree or gravity of the defendant's conduct, *i.e.*, the force employed and the physical manner in which the victim's death was brought about or the nature and circumstances of the offense." *People v. Saldivar*, 113 Ill. 2d 256, 271 (1986).

¶ 31    When considering whether the aggravating factor that the defendant's conduct caused or threatened serious bodily harm pursuant to section 5-5-3.2 of the Unified Code of Corrections (730 ILCS 5/5-5-3.2 (West 2020)) applies, "the sentencing court compares the conduct in the case before it against the minimum conduct necessary to commit the offense." *Hibbler*, 2019 IL App (4th) 160897, ¶ 67. "Anything and everything beyond the minimum conduct necessary for the defendant to be found to have engaged in criminal behavior is entirely appropriate for a sentencing court to consider." *Id* ¶ 71.

¶ 32    The defendant's improper double enhancement argument fails because the record shows a strong basis for the trial court to have found harm above the minimum necessary to establish the elements of the aggravated battery charge pursuant to section 12-3.05(b)(1) of the Code (720 ILCS 5/12-3.05(b)(1) (West 2020)). See *Hibbler*, 2019 IL App (4th) 160897, ¶¶ 69-71. A person who, in committing a battery, "causes great bodily harm or permanent disability or disfigurement to any child under the age of 13 years," commits aggravated battery. 720 ILCS 5/12-3.05(b)(1) (West 2020). Generally, "great bodily harm" is described as more serious than ordinary battery, which "requires a showing of 'some sort of physical pain or damage to the body, like lacerations, bruises

16

or abrasions, whether temporary or permanent.' " *People v. Daniels*, 2016 IL App (4th) 140131, ¶ 101 (quoting *People v. Mays*, 91 Ill. 2d 252, 256 (1982)).

¶ 33    The trial court did not err by determining that defendant caused or threatened to cause serious harm as an aggravating factor based on the facts of this case. The defendant argues that the factual basis to support the charge included that the injuries occurred over time "in all types and manners; with burns, whips, cuts, and it literally took place from head to foot," and "were consistent with having been received by cutting instruments, burns, and possibly a flexible object capable of looping or wrapping around body parts." The factual basis necessary to support the charge, however, only required the State to prove that the defendant struck M.W. with an object causing scars with lines and loop marks on or about her legs and back. Presenting evidence of dismissed charges does not violate a plea agreement. *People v. Jorgensen*, 182 Ill. App. 3d 335, 386 (1989). Thus, it was appropriate of the State to present, and the trial court to consider, the harm caused by the dismissed charges. Further, while it is true great bodily harm is inherent in the offense for which the defendant was convicted, not every act of aggravated battery leads to the number, types, and severity of injuries seen in this case, with scarring over M.W.'s entire body. In the present case, M.W.'s injuries exceeded the minimum necessary to establish great bodily harm. Moreover, the record supports the trial court's finding.

¶ 34    In considering the severity of the injuries to M.W. in aggravation, the trial court acknowledged that it could not consider facts inherent in the offense but found that there were many facts outside of the four corners of the charge that were aggravating. We agree.

¶ 35    Certain types of criminal conduct may warrant a more severe penalty than other conduct. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 17. As such, the severity of the sentence depends largely in part to the degree of harm inflicted on the victim and may be considered as an

17

aggravating factor in imposing a sentence, even when serious bodily harm is implicit in the offense. *Id.* Here, the trial court made mention of the egregious injuries caused to M.W.'s body, specifically stating:

> "I saw the photographs, I've heard the testimony. It's crystal clear that this defendant, over the course of time, so it wasn't a one-time thing. Some of these injuries were healing, some were healed, some were fresher. So it occurred over time, and it occurred in all types and manners; with burns, whips, cuts, and it literally took place from head to foot.
>
> And I agree with [assistant state's attorney], your first thought is pictures you see from the Civil War of slavery, of people being whipped. But even in movies where they're depicting this, I've never seen images like I did in those photographs of the number of injuries, the types of injuries, the variety of injuries, the number of types of items used, and the entire body.
>
> It was almost as if they were photographs out of a horror movie. So there are multiple objects over time, different kinds of injuries, including knives; these injuries, many of which will be permanent for this child.
>
> I think those are all factors that are beyond the four corners of count one."

¶ 36 After careful and proper consideration of the evidence, the trial court's comments reflected the nature and circumstances of the offense. Accordingly, we find that the trial court did not improperly rely on a factor inherent in the offense, great bodily harm, as a factor of aggravation.

¶ 37                        B. Excessive Sentence

¶ 38 The defendant's next contention on appeal is that the trial court abused its discretion by sentencing her to a 20-year term of imprisonment in IDOC. According to the defendant, her 20-

year sentence is excessive, given her age, lack of criminal history, mental health diagnoses, and rehabilitative potential. The defendant requests that this court reduce her sentence to a term of years closer to the statutory minimum, or in the alternative, to reverse and remand to the trial court for new sentencing proceedings. The State responds that the trial court properly exercised its discretion in sentencing the defendant where the sentence was within the statutory limits and was based on a careful consideration of the factors in aggravation and mitigation.

¶ 39     A trial court has broad discretionary powers in choosing the appropriate sentence a defendant should receive. *People v. Jones*, 168 Ill. 2d 367, 373 (1995). In determining what sentence to impose, the trial court may consider (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence. *People v. Klein*, 2022 IL App (4th) 200599, ¶ 36. The seriousness of the offense is the most important sentencing factor, and the trial court need not give greater weight to rehabilitation or mitigating factors than to the severity of the offense. *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 112.

¶ 40     Appellate review of a sentence fashioned by the trial court is limited to whether the record discloses that the trial court's sentencing decision was unlawful or an abuse of discretion. *Id.* An abuse of discretion will be found where the sentencing court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). The trial court is granted this deference because the trial court is in a superior position to assess the credibility of the witnesses and to weigh the evidence presented at the sentencing hearing. *People v. La Pointe*, 88 Ill. 2d 482, 492-93 (1981). Consequently, a reviewing court may not overturn a sentence merely because it might have weighed the pertinent factors differently. *People v. McGowan*, 2013 IL App (2d) 111083, ¶ 10. An abuse of discretion

19

may be found, even if the sentence is within the statutory range, if it is contrary to the purpose and spirit of the law. *People v. Weiser*, 2013 IL App (5th) 120055, ¶ 33. The spirit and purpose of the law are promoted when the trial court's sentence both reflects the seriousness of the offense and sufficiently considers defendant's rehabilitative potential. *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992).

¶ 41    Applying these principles to the instant case, we hold that the trial court did not abuse its discretion in sentencing the defendant to a 20-year term of incarceration. The defendant pled guilty to aggravated battery of a child, a Class X felony. The defendant could have been sentenced to between 6 and 30 years in IDOC. Probation was not an available sentence, and the sentence is required to be served at 85%. The sentence fashioned by the trial judge was well within the statutory range.

¶ 42    The defendant argues that the trial court did not properly consider certain mitigating factors, including her age, lack of criminal history, mental health diagnoses, and rehabilitative potential. However, the defendant's contentions are clearly refuted by the record on appeal. The record of proceedings in this matter demonstrates that the trial court discussed the factors in aggravation and mitigation in its lengthy, extremely detailed findings.

¶ 43    When mitigating evidence is presented at the sentencing hearing, a reviewing court presumes the trial court took that evidence into consideration, absent some contrary evidence. *People v. Shaw*, 351 Ill. App. 3d 1087, 1093 (2004). "[A] trial court is not required to expressly outline its reasoning for sentencing, and absent some affirmative indication to the contrary (other than the sentence itself), we must presume that the court considered all mitigating factors on the record." *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. This presumption may be overcome only by showing explicit evidence from the record that the trial court did not consider mitigating

evidence. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). Here, the defendant does not show any affirmative indication of record that the trial court failed to consider the mitigating factors.

¶ 44    The trial court specifically stated it recognized there were mitigating circumstances in this case. The trial court acknowledged that the defendant ultimately accepted responsibility for her actions as a mitigating factor. The trial court noted that the defendant's guilty plea prevented M.W. having to testify against her mother. The trial court noted the defendant's age, and that other than traffic tickets, she had no criminal record. The trial court acknowledged that the defendant had been actively engaged and participating in classes and other programs while she was in jail. We agree with the State that the trial court's statements clearly indicate the trial court's consideration and balancing of any mitigating factors and the defendant's rehabilitative potential. The trial court expressly considered the defendant's very difficult upbringing, her medical issues, her serious mental health issues, and her long-standing substance abuse issues.

¶ 45    The seriousness of the offense is the most important sentencing factor, and the trial court here discussed the grave circumstances surrounding the offense. In doing so, the trial court rightfully noted the seriousness of the abuse suffered by M.W. The record of proceedings clearly indicate that the trial court considered and balanced all the statutory factors in both aggravation and mitigation in this case. The trial court, however, was not required to afford great weight to the rehabilitation or mitigating factors than to the severity of the offense, nor will we reweigh those factors. Accordingly, we find that the trial court's sentencing determination was not an abuse of discretion.

¶ 46                                III. CONCLUSION

¶ 47    For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

21

¶ 48    Affirmed.